Thank you, Your Honors. Again, my name is David Ness. I'm representing Stanette Crowe. There were four issues raised in this case, but I think the second and third issues probably merit the most discussion, if not all the discussion. That has to do with whether or not the district court erred in instructing the jury on involuntary manslaughter, and whether it erred in denying Ms. Stanette's post-trial Rule 29 motion on the same issue, whether or not there was evidence to support the jury's verdict, finding Ms. Crowe guilty of involuntary manslaughter. I think, in reality, those two questions are one and the same. They really boil down to the same question, and that is whether or not there was sufficient evidence for the jury to find Ms. Crowe guilty of the crime of involuntary manslaughter. The steps to be taken, of course, in analyzing whether or not a judge should instruct a jury on a lesser-included offense is first, is it a lesser-included offense, and we have to acknowledge that, in general terms, involuntary manslaughter is a lesser-included offense. That's what our case law says. Yeah, I can't argue against that. So I think where we're at here is really more the second question, and that is, under the state of the evidence that was presented in this case, could a jury rationally find Ms. Crowe guilty of the lesser-included offense and, at the same time, acquit her of the greater offense, that being voluntary manslaughter? And I think when you analyze that question, what the court really needs to do is maybe the first step is to look at the procedural posture of this case. This case went to trial. Ms. Crowe was charged with involuntary manslaughter. She raised the defense of self-defense. The government presented Rule 404B evidence to suggest that this wasn't a matter of self-defense. In fact, she struck out at her husband and killed him. She presented evidence indicating that her husband had a past history of violence against her. By the time it got to the charge conference, although Ms. Crowe had, prior to trial, submitted an involuntary homicide instruction, she withdrew it, essentially saying that there's not sufficient evidence. During the closing arguments, no one argued, neither the government nor the defense, that this was somehow accidental. It both centered on what happened. Was there really self-defense here? Or, as the government continuously argued, was she just angry? Was this a fight? Was she angry? Even if there was some violence, did she overreact to the point of stabbing her husband in the chest? And the jury was instructed on self-defense. The jury was instructed that they had to find, beyond a reasonable doubt, that she didn't act in self-defense. Let me ask you a question. Sure. I'm not quite sure. So the judge said, I think I should give involuntary manslaughter as an instruction. That's correct, yes. Men's counsel says, don't do that. We don't want you to do that. In essence, that's correct. That's what happened here? Well, actually, defense counsel posed the instruction initially, right? And then when the judge said he was going to give it, defense counsel said, no, I know we posed this. We don't want it anymore. Is that what happened? I think, I can't remember defense counsel's exact words, but it was on some long lines.  He was withdrawing the involuntary manslaughter. And he explicitly said that. I'm withdrawing it. Yeah. When that happens, can the judge still, as was done here, is it legally proper for the judge to say, OK. I think that is. I won't give it. Because I realize that you want to go for self-defense. Is it. And can you. I'm sorry. I mean, the judge there. So I'm a trial court district. This happened to me before when I was a district court judge, a state trial court judge as well. Or the defendant says, OK, I don't want that that lesser included offense instruction. And as a judge, I'm thinking, well, if I don't give it, I'm going to get reversed. They have to give it. I think the evidence might support it. But the defense lawyer says, don't give it, judge, because we think it's not our theory of the case. Our theory of the case here is just straight out self-defense. We don't want you to give it. Does the judge. My question is, does the judge have the authority as in this case to just go ahead and give it. Under those circumstances. I think that a judge in general terms can give a lesser included offense if it's supported by the evidence. Over the defendant's objection. Certainly the government, which didn't happen in this case. Over the defendant's objection. Over the defendant's objection. But I don't understand what your complaint is then. Well, my complaint. You really have nothing. The sufficiency of the evidence argument. And that's it. And that's my point. That's why I started out trying to say that these are really one in the same issue. And that's whether or not they're a little bit different for me. If I were sitting as a trial. And you can look at it as a court. Just a little bit. You're really coming down to either. Was there sufficient evidence here to support an involuntary manslaughter conviction? That's correct. Yes. Yes. And I see what you're saying. And I don't know. You know, if you look at the evidence and you look at it in the light most favorable to the jury's verdict. You know, it's pretty hard to argue. See, and that's I would disagree. Because if you look at the elements of involuntary manslaughter. What does the government had to prove? Really one of two methods of death here. And one of those is that she committed an unlawful act. Not amounting to a felony that resulted in her husband's death. There was no, to the extent that there was any act at all. That act was that she picked up a knife and stabbed the man in the chest. She said that that's what she meant to do. She said the testimony was very clear that he was, from her testimony anyway. That he was choking her. That she told him stop choking her. Or she was going to stab him. She had a knife. She stabbed him in the chest. I don't see how any rational jury could, rational jury may be able to find that she acted in self-defense. But once it rejected that, once it found that she engaged in an unlawful act of force. We don't have a misdemeanor there. So that first element isn't there. The second element is that she committed a lawful act that was done in an unlawful manner. Now, again, the lawful act has to boil down to the question of whether or not her action. In intentionally picking up a knife and stabbing her ex-husband in the chest. Was that lawful? The jury decided beyond a reasonable doubt that it was not lawful. It necessarily did that when it rejected her self-defense claim. This isn't a case where she engaged in an act of force. The jury had determined that in defending herself she used excessive force. But as she looked. But, and they may very well have done that. But that changes her act into an unlawful act. She engaged in what can only be characterized as deadly force. Or force that would likely result in great bodily harm. She picked up a knife, she stabbed the man in the chest. In the chest. This isn't a case where as, you know, the arm case and the iron shields case. And things like that talk about where she was engaged in something less than deadly force. Or something less than force that would likely result in something less than great bodily harm. And that she did that in a criminally negligent manner. That wasn't the facts of this case. And there was nothing to suggest that she engaged in anything less than that. She used deadly force. And having used the deadly force. And the jury having found that it was, that she wasn't acting in self-defense. She engaged in an unlawful act. So what case in your view best defines involuntary manslaughter as you're defining it? Well, I guess in the self-defense cases, there's the arm case, of course. And that's. But you said the jury rejected her self-defense argument. Right? Right. Okay. So you're defining involuntary manslaughter as something other than self-defense. Because you said that was rejected. So what case authority supports your view of what constitutes involuntary manslaughter? Your theory of involuntary manslaughter. I guess I'm going off more than cases. I'm going off the statute and the instructions that were given to the jury in this case. And involuntary manslaughter is basically occurs when there's an unlawful act not amounting to a felony, such as I think the case we just heard where the defendant was driving allegedly while drunk and hit someone. Or if you commit a lawful act and it's done in an unlawful manner. But the judge, the judge's instruction on involuntary manslaughter was a wanton or reckless disregard for human life, but not of the extreme nature that will support a fine of malice. So how does that square with your argument that there was insufficient evidence to support the verdict? Because if you. I'm sorry that there was the Ninth Circuit case and it's slipping my mind right now, but the name of it. But that was the case where the defendant requested an involuntary Skinner. I believe it was he requested an involuntary manslaughter instruction. And what happened there was apparently he shot the victim. And this court said, no, he's not entitled to that. You you the the degree of recklessness, the degree of malice when you shoot someone rises above what's, you know, involuntary manslaughter. It was an intentional act. And in all of these self-defense cases, that's what they really kind of come down to is say, look, if you engage intentionally engage in conduct that's likely to cause death or likely to cause great bodily harm and your self-defense claim is rejected, then you can be found guilty of voluntary manslaughter because that's imperfect self-defense. But not involuntary manslaughter. What case says that? Skinner doesn't say that. What case says that you can't be found guilty of involuntary manslaughter if your self-defense defense is rejected? Well, I'll confess, none of them say it say it that directly. But if you look at the United States versus Manuel, which is a case out of this circuit, and it says if the defendant attempts to use non-deadly force, but does so in a criminally negligent manner and death results, then both involuntary manslaughter and self-defense instructions would be warranted. Particular voluntary and involuntary, both involuntary and self-defense instructions would be warranted. So involuntary manslaughter instruction would be appropriate, right? If the defendant attempts to use non-deadly force. The defendant here did not, Your Honor. You're saying your argument then must be based on the fact that she used a knife. She picked up a knife. And in your view, that's deadly force. What kind of knife was it, by the way? It was a kitchen knife. What kind of kitchen knife? It wasn't a meat cleaver or anything. No, but it was in a knife block. And it went in long enough to cut his pleural artery, I believe it was. I confess, I wasn't a trial lawyer. I haven't seen a picture of the knife. When did she pick it up? What were the circumstances? They had been fighting, right? Right. And he had been hitting her, and they were at the kitchen counter. Right. And she reached, did she reach behind herself and grab the knife? Did she reach behind him and grab the knife, or to the side and grab the knife, or what? Her testimony was that she reached on the kitchen counter, I think to her left, I believe was her testimony, grabbed the knife. She told him, if you don't stop choking me, I'm going to stab you. And he didn't stop choking her, so she stabbed him. Did she hit him front on, or did she hit him on the side? I believe, and I can double-check this, but I believe it was somewhere above the left nipple, left breast, and I believe it was to the upper right. I can double-check that, but it was in that area. Counsel, I'm a little curious about your reliance on the Manuel case. That's on page 915 of that case. It says, a self-defense theory advanced by the defense can be consistent with a conviction for involuntary manslaughter under some circumstances. So what do you read in that case to say that involuntary manslaughter instruction is unavailable when deadly force is used? Well, and then later on it says, again, if the defendant attempts to use non-deadly force, but does so in a criminally negligent manner, then involuntary manslaughter would lie. Where's that language? Oh, that is, I'm trying to look. I have a Lexus copy here. I think it would be on page 915, Judge, I think. That's where I was reading from. And then it goes on and says, this situation must be distinguished from the typical case of imperfect self-defense, which the defendant intends to use deadly force in the unreasonable belief that he is in danger of death or great bodily harm. In this circumstance, the offense is classed as voluntary manslaughter. And that's, I believe, the facts we have here. Yeah, but it doesn't say to the contrary. It doesn't say that involuntary manslaughter is inapplicable if deadly force is used. It gives one example. And I did confess it's not crystal clear in all of these cases, but I think that's what all these cases are saying. Okay. You know, it can't be an accident. If you intend to stab someone in the chest with a knife, you're using deadly force. I understand. Good. Good morning, Your Honors. Eric Wolfe for the United States. I agree with Mr. Ness. I think the issue that merits discussion of the second and third issues. The first issue is evidence that involves heat of passion and the jury didn't find heat of passion. They found involuntary manslaughter on the involuntary manslaughter point. This is a pretty straightforward application of the circuit's law. This case is actually fairly similar to the art case. Aren't aren't aren't. And then Anderson. They both involve knives. They both involve. I mean, art is a domestic violence fight where where he's coming at her and she holds the knife and the air. Both of those appeals was failure to give an involuntary manslaughter instruction. And I just don't think, you know, any reasonable district judge in this circuit faced with the facts here. Forget the arguments of counsel. I mean, counsel each go out on their own polls. I was a trial counsel. I read the record, and it was pretty plain to me that both sides are sort of taking the extreme view. The judge and the jury quite reasonably looked at the facts and said they were in the middle. The if you have these facts and you've read the art case, you give an involuntary manslaughter instruction. And I agree with you, Judge Pais. I think that the court is faced with a situation where if you don't give it, even if the defendant does what he did here, the defense counsel, we know what's going on. He's sizing up his prospects for an acquittal. And he thinks that if the jury is faced with a voluntary manslaughter or acquittal, that that will maximize the chances of acquittal because he thinks the evidence has come in in a way that they're likely to reject heat of passion. And here's why they'll reject heat of passion. Let's just be honest. The victim is not sympathetic at all. He's beaten her up. He's beaten her up when she's pregnant. Any reasonable juror is going to think, you know, this is a guy. It was coming to it. Someday it was coming to it. So the jury, the defense counsel is thinking they're going to reject heat of passion. He wants to maximize the chances for acquittal, so he doesn't want an involuntary instruction. That's what's going on. It has nothing to do with law. It has nothing to do with what a rational jury can find from the facts. The judge quite sensibly said, I've got to give that involuntary manslaughter instruction, and here's why. Contrary to the factual depiction you just heard, Ms. Stenette Crow did not testify that, oh, I picked up the knife and I plunged it into his chest because he was in the process of choking me, and I thought I was going to die, and so I stabbed him in the chest. That was not her testimony at all. Her testimony was, we had fights, I was angry at him, and I put some of the quotes in the brief, like, well, what was he doing to you? Well, like he might have hit me in the head maybe, like here. I mean, it was very vague. She did say, as you described, Your Honor, she described reaching behind, grabs a knife out of a block, and she swings. And Mr. Ness got it essentially right. It was on the right side. It was just to the left of the nipple and just above the nipple, and it hits that big artery, and the coroner says about seven pot cans full of blood fill him up on the inside, and he dies. Okay, it's a pretty good shot. It went in between the ribs. So in that respect, however you want to say it, I mean, she was either lucky or unlucky, but it would be hard to do it twice. But her testimony was, and other testimony was, that she comes out of that encounter saying, I might have stabbed him. She herself testifies that she wasn't sure whether she had stabbed him or not. What's really going on here? Who knows? The jury had to resolve it, but who knows? The government's view and the agent's view was, it's quite possible she murdered him. You know, he had it coming. He had beat her up before. It's quite possible that she just was mad at him and murdered him. The defense view was, oh, reasonable self-defense. He's choking her, and she reasonably grabbed the knife or whatever. Her actual testimony, all over the map. I'm not sure whether I stabbed him. I feared for my, she doesn't actually say she feared death. And she doesn't even say that she feared the death of her child. She says she was scared. I didn't know what he was going to do. That was the actual testimony. I put it in the first paragraph of our brief. But she also testifies she didn't know whether she had stabbed him or not. That's involuntary manslaughter. That's aren't. That's Anderson. They both involved knives. We're swinging knives because we're scared. The jury, Mr. Ness said a couple times, the jury rejected self-defense. No. The jury rejected reasonable self-defense. What she could have done is, what the jury may have been thinking is, you know, we just don't believe that she had that much threat to her. And maybe she did just swing that knife, and she wasn't quite sure what was going to happen. But it was too much. Well, we actually don't. We have no idea what the jury was thinking. It could have been a compromised verdict. It could have been anything. We have no idea. It could have been. And it could have been that she really murdered him. And she just got lucky that the circumstances were such, and the history was such, that involuntary manslaughter was very plausible. We don't know. Unless the court has questions. Has there been sufficient evidence to justify involuntary termination? It's not very close on that. His argument is based on the language in Manuel that says, if you have non-deadly force, then involuntary manslaughter pertains. But his argument is that means that if you use deadly force, then it has to be either voluntary manslaughter or murder. What's your response to that argument? He's mixing up what is a legal issue about giving lesser included with, like, factual issues. And I tried to explain this in the brief, but I reread my brief, and it's kind of confusing. What happens, there's a situation, and it's explained in the Anderson case. Let's say, like, some guy pushes me on the street, and I pull out a gun and blow him away. You can't claim involuntary manslaughter on that, because you chose to use deadly force in a situation where it could not conceivably be deadly force. So that either got to go voluntary manslaughter, second-degree murder, something else. That just can't be involuntary manslaughter. You can have a situation where, and I don't know if this is Manuel or not. I haven't focused on it. In any given case where you can have voluntary manslaughter, involuntary manslaughter remains a lesser included offense as a legal matter. But you don't get the instruction. And the reason you don't get the instruction is because there's no way for the jury to go one way or the other. In order to get the instruction, the jury has to be able to rationally pick one but not the other. And if the only thing would be, oh, they just want to give her less punishment, that's out. You can't do that. So in every case … But what case says that? What case says you can't do that unless the jury can pick one or the other? Yeah, Arndt says that, the Betty Fletcher opinion. The Seminole Supreme Court case is Sansone, S-A-N-S-O-N-E. You don't just get a lesser included because it's a lesser included. It's got to be a situation where the jury can go one way or the other. And so that brings us back to the facts here. Well, just to try and clear this up, and I don't mean to sort of ramble on this. But where the cases about involuntary manslaughter are drawing this line about, you know, was it deadly force with intent to kill or it wasn't, and that's sort of the dividing line. What that discussion is really getting at is, are we in an area where there's no factual reason why it wouldn't be voluntary manslaughter? That's what they're really saying. There's no line here that is, you know, if it's deadly force, then, oh, it can't be this. What's really going on here is you have situations where if those are the facts, it has to be voluntary manslaughter because that's what you did. And the only reason you get involuntary is because it's lesser. Those are – I'm kind of stumbling on myself. If you've used deadly force and you intended to kill, you don't get an involuntary manslaughter instruction because you don't have any facts where the jury can go one way or the other. They'd have to find you guilty of voluntary manslaughter, and we don't give them the option of finding the lesser. That's what I'm trying to say. Okay, so let's get back to you. Isn't always deadly force. That's what he's saying, except in Anderson and Arndt, they used knives, and this court found that it was plain error not to give an involuntary manslaughter instruction. And let's face it. I mean, knives are like that. I mean, sure, you can kill somebody with a knife. You can probably kill somebody with a stapler, but the fact is you can threaten them with it. You can wave it around. You can hold it, and they run at you or something like that. I mean, who knows? You can do the same thing with a gun. You can threaten them with it. Absolutely. You can wave it around. Absolutely. And so what you need to – when you get down to, like, the granular level in this case, you have to look at what the testimony was, and it's not what Mr. Ness depicts. Ms. Crow is on the stand, and she says, I didn't know whether I stabbed him. I was scared for myself. I didn't know what was going to happen. Okay, the jury can – a rational jury – and we're just making this up, right? Like, we don't know what the jury actually decided, but a rational jury could say she's scared. She grabs a knife. She takes a swing. And this is not somebody who is, like, plunging it directly into his chest near his heart trying to kill him. And that would be the difference. That would allow you to go down the involuntary manslaughter path instead of the – He acted recklessly with the knife. She what? He acted recklessly with the knife. Yes. Carelessly with the knife. Yes. Because the other thing that the jury could question is whether he was really choking her. There was no physical evidence of that. That was what she said, but there was reason to doubt that. The jury might have thought that she overreacted. And her actions afterward strongly suggested overreaction. She is not talking. There is a dead body on the living room floor, and nobody is talking about what happened. And she doesn't give it up until we're at the hospital, and she's driven around with her uncle, and she says she's scared. I mean, what could have happened here is there was a split-second decision where he has made her really mad, and maybe he pushed her or something. But she takes a swing at him with a knife, and she realizes, I'm overreacted. But involuntary manslaughter was a very reasonable verdict for these facts. If there are questions. There's one question I have, and that's on submission of that prior incident, 404. I realize that the verdict here was they rejected voluntary manslaughter and whatnot, but do you think it might have had any impact on her self-defense? You know, in all honesty, yeah, maybe. It would have made him doubt it just a little bit and suspect that maybe she was more willing to overreact, to go too far. I think that's possible. In the end, though, the jury just rejected the government's view. I mean, the government's view was that she struck out in anger. Didn't want him to go party that night, and it was similar to the prior event. And, you know, she plunged a knife into him because she was mad at him, just like she had smashed a liquor bottle on his head. So the jury rejected that. But I do think it may have affected them a little bit. Now, the reality of the context of the trial is, and I don't know how you all approach this on a district court bench, but the district court knew that it was going to have all this information come in about the victim and how terrible the victim was. And the district court was going to have stuff come in on the defendant, that she has the character trait of peacefulness and whatever. You know, 404B, 403, whatever, this comes in. Okay, this is fair. It's just not fair if you get to dump all over the victim and have your high school friends say that you're peaceful, and it turns out you sent that guy to an emergency room because you smashed a pint of liquor bottle on his head. I think that's, in the greater scheme, that's fair. It's not unfair prejudice. And it's classic 404B because the only thing that makes this case unique is that, like, the genders are reversed. If the genders were the husband who chronically abuses the wife and the wife is the victim, I don't think anybody would even think twice that the prior abuse comes in, and that's the Hinton case. And so here, you know, the genders are reversed, but the legal issue is seemingly straightforward. All right, thank you. Thank you. I'll give you a minute for rebuttal there. Just very briefly, I think the Anderson and the Orange case are significantly different than this case, and they're significantly different because there was evidence that in the Orange case that the victim ran into the knife or fell onto the knife rather than the defendant purposefully stabbing him. And the same thing in the Anderson case. That was the case involving the prison inmates in a struggle, and the testimony was that the victim pulled the knife and there was a struggle, and the victim fell onto the knife and died. So those two cases are significantly different. And I guess maybe the government and the defense has had a disagreement over the state of the evidence and always will, but if you look at the transcript in Ms. Crow's answers, both on cross-examination and direct examination, she clearly says, I stabbed him, I meant to stab him. And that's what makes this case different than the Anderson or Orange. Thank you. Thank you for your arguments. We appreciate them. And we'll adjourn for today. Thank you all very much. Thank you.
judges: Paez, Rawlinson, Jenkins